WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Don Gesell,

                  Plaintiff,

v.

Maricopa, County of, et al.,

                  Defendants.

No. CV-13-02369-PHX-ESW

**ORDER**

       Pending before the Court are cross-motions for summary judgment in a civil case removed from Maricopa County Superior Court arising from the arrest of the Plaintiff which occurred in October 2012.  The parties have consented to proceeding before a Magistrate Judge pursuant to Rule 73, Fed. R. Civ. P. and 28 U.S.C. § 636(c). (Docs. 5, 6).

### Procedural History

       Plaintiff filed a Complaint (Doc. 1-1) in Maricopa County Superior Court on October 4, 2013.  The case was removed to U.S. District Court on November 19, 2013 by Notice of Removal of Maricopa County Superior Court civil cause number CV2013-050473, under 28 U.S.C. § 1441(b).  (Doc. 1).  Defendants filed an Answer on November 26, 2013 (Doc. 3).  All issues are joined.

       Plaintiff filed a "Motion for Summary Judgment in Part" (Doc. 38), "Memorandum of Points, Authorities and Law in Support of Plaintiff Don Gesell's

Motion for Partial Summary Judgment" (Doc. 39); and "Plaintiff's L.R.Civ. 56.1 Statement of Facts in Support of Motion for Summary Judgment in Part" (Doc. 40) on December 8, 2014.  Defendants filed their "Response to Gesell's Motion for Summary Judgment (Docs. 38 and 39) and Motion to Strike" (Doc. 44); and "Response to Plaintiff's Statement of Facts (Doc. 40) and Separate Statement of Facts" (Doc. 45) on January 12, 2015.  Plaintiff filed his "Motion for Leave to File Memorandum of Law in Support of Motion for Summary Judgment in Excess of Page Limit" (Doc. 46) on January 14, 2015.  On January 21, 2015, Plaintiff filed his Reply (Doc. 49).

Defendants filed their "Motion for Summary Judgment" (Doc. 41) and "Separate Statement of Facts in Support of Their Motion for Summary Judgment" (Doc. 42) on December 19, 2014.  Plaintiff responded (Doc. 43) on December 23, 2014, and Defendants replied (Doc. 48) on January 16, 2015.  Defendants also filed their "Supplemental Statement of Facts" (Doc. 47).

Though the Court is faced with cross-motions for summary judgment, the parties did not file stipulated facts.  The Court will evaluate each motion on its own merits.

### Motion to Strike and Motion for Leave to File Memorandum of Law in Support of Motion for Summary Judgment in Excess of Page Limit

Plaintiff's Motion for Summary Judgment in Part (Doc. 38), Supporting Memorandum (Doc. 39), and Statement of Facts (Doc. 40) fail to comply with Rule 56(e), Fed. R. Civ. P., L.R.Civ. 56.1(a), and L.R.Civ. 7.2.

Plaintiff's Motion and Memorandum are forty-nine pages long, exclusive of the Statement of Facts and attachments.  Plaintiff has not shown good cause to exceed the page limit of seventeen pages set forth in L.R.Civ. 7.2(e)(1).  The Motion and Memorandum (Docs. 38 and 39) are repetitive.

In addition, L.R.Civ. 56.1(a) states that "Each material fact in the separate statement must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery, response, etc.).  A failure to submit a separate statement

of facts in this form may constitute grounds for the denial of the Motion."   In the Statement of Facts, Plaintiff fails to attach referenced deposition transcripts of Donald A. Gesell, Brianna Gesell, Hannah Gesell (Doc. 40, paragraphs 15 through 19, 21-22, 24, 29 through 34).   Paragraphs 5 through 14, 37, 40, and 41 of the Statement of Facts are unsupported by any citation to the record, and paragraphs 7 through 14 are not factual statements. (Doc. 40).   Documents cited in the Statement of Facts at paragraphs 22 (there are two paragraphs 22), 36, 38, 39, and 47 contain no Tab location. (Doc. 40).   Plaintiff places multiple documents in each Tab.   The Appendix pages are not numbered. Tab #2 contains multiple documents which are never referenced in the Statement of Facts (Doc. 40).   Tab #2 is duplicated. (Doc. 40).   Tab #3 appears twice with different documents behind each Tab #3. (Doc. 40).   The depositions of Officers Bricklin, Harvey and Paige are not provided until the Reply (Doc. 49).   Many deposition references have no page and line citation (Doc 40 at paragraphs 32, 37, 40).   Plaintiff fails to comply with L.R.Civ. 56.1(a).

Plaintiff also fails to comply with L.R.Civ.  56(e) which states in pertinent part: "memoranda of law filed in support of a motion for summary judgment . . . must include citations to the specific paragraph in the statement of facts that supports assertions made in the memoranda . . . ."  Plaintiff's Motion and Memorandum (Docs. 38 and 39) contain no citations to any specific paragraph of the Statement of Facts (Doc. 40).  *See* Rule 56(c) and (e), Fed. R. Civ. P.

The Court has spent hours deciphering Plaintiff's Motion, Memorandum, and Statement of Facts.  Only because the Court has done so, the Motion to Strike (Doc. 44) is denied.  The Court will proceed to the merits of each federal claim.  The Motion for Leave to File Memorandum of Law in Support of Motion for Summary Judgment in Excess of Page Limit (Doc. 46) is granted on the grounds of judicial economy rather than for good cause shown.  *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).  The Court is not confident that requiring Plaintiff to refile his motion for

summary judgment in compliance with the Federal Rules of Civil Procedure and Local Rules would result in greater clarity of the record.

### Legal Standard for Summary Judgment

Summary judgment is appropriate if the evidence, when reviewed in a light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material in a case and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Anderson,* 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)); *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

When moving for summary judgment, the burden of proof initially rests with the moving party to present the basis for his motion and to identify those portions of the record and affidavits that he believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant fails to carry his initial burden of production, the non-movant need not produce anything

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

further.  The motion for summary judgment would then fail.  However, if the movant meets his initial burden of production, then the burden shifts to the non-moving party to show that a genuine issue of material fact exists and that the movant is not entitled to judgment as a matter of law.  *Anderson,* 477 U.S. at 248, 250; *Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in his favor.  *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968).  However, he must "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation and emphasis omitted); *see* Fed. R. Civ. P. 56(c)(1).

Finally, conclusory allegations unsupported by factual material are insufficient to defeat a motion for summary judgment.  *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989); s*ee also Soremekun v. Thrifty Payless, Inc.,* 502 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").  Nor can such allegations be the basis for a motion for summary judgment.

## Facts

The following relevant facts are undisputed in the record and form the basis for all counts of Plaintiff's Complaint:

On October 26, 2012, Donald A. Gesell (Plaintiff) was present at 38951 North School House Road in Cave Creek, Arizona.  This property was owned by Mr. Del Deo (Del Deo), his landlord.  A Warranty Deed recorded on March 26, 2012 in Maricopa County, Arizona, reflects that Plaintiff had previously conveyed the property to Del Deo for valuable consideration (Doc. 42-3 at 9).

A forcible detainer hearing held and Order of eviction issued on November 6, 2012 reflect that Del Deo was granted immediate possession of the property and judgment against Plaintiff for past due rent, attorney's fees, and Court costs in the amount of $10,475.00, plus interest and after-accruing costs. (Doc. 40-7 at 15).

Maricopa County Sheriff's Office (MCSO) CAD Incident History Report dated October 26, 2012 (Doc. 42-1 at 2) reflects that Dispatch received a call from Del Deo at 8:26:11 on October 26, 2012.  Dispatch relayed the following information to officers: "There's a subj with a tractor and crane pulling items out of his front yard . . . he's ripping up his landscape.  Compl is in Palm Springs and his nghbr called him 3 mins ago to adv of this happening."  At 8:27:12, Dispatch further relayed, "The nghbr said 'He is in your front yard tearing it up with a tractor and crane' so he assumes that it's a tenant that has refused to leave and Compl had to get a lawyer to have him removed."  At 8:28:05, Dispatch relayed:  "The Nghbr is CJ 602-818-5871.  I'll call him for further . . . the tenant is a 'Don Gesell'."  At 8:29:51, Dispatch added:  "I have 'CJ' on the line . . . He says it's the tenant 'Don Gesell' . . . this sounds like a long story . . . the subj Don was removing boulders and a cactus . . . the boulders include very expensive petrified wood." At 8:31:13, Dispatch stated:  "CJ did not see Don . . . He got this third party . . . CJ got the call about 25 minutes ago . . . Don is a very big guy with white hair.  He does not know if Don is still on the tractor or not."

Maricopa County Sheriff's Deputy Bricklin arrived on the scene at 8:35:36. MCSO Volunteer Posse Member Paige arrived on the scene at 8:38:15.  The deputies saw no one on the property.  The door of the residence was open.  Plaintiff's work vehicle was parked in the driveway.  However, no one was in the house.  The deputies secured the house and left the scene at 9:04:51.  The call was a priority 2, "647," described as "suspicious object/circumstance."  Deputy Bricklin later described the property as having sustained "significant damage to the landscaping of the exterior of the property."  (Doc. 42-11 at 3)

MCSO Deputies Bricklin, Rowe, and Posse Volunteer Paige responded to the same property as a result of a second call received from Dispatch later that same morning.  At 10:13:43, Dispatch told officers the following information:  "C.C. Needs to report home broken into while the house was vacant even stole the gate and landscaping." Deputies Rowe, Paige, and Bricklin were on the scene by 10:21:43.  The original call was

classified as "459," which is burglary.  The final call was denoted as "487," or theft, at 18:34:40.  (Doc. 42-2 at 2-3).

Waiting for the officers on the property when the officers arrived the second time were the owner, Del Deo, and his agent, Carl Winski, III (Winski).  (Doc. 42-11 at 4).  Del Deo and Winski told the officers that the interior and exterior of the property had been damaged and fixtures to the property were missing or stolen.  The officers observed the reported interior and exterior damage to the property and took photographs.  (Doc. 42-11 at 2-31).  Del Deo told the deputies that Plaintiff had damaged the property, and Del Deo estimated the cost of repairs to be $600,000.  (Doc. 42-3 at 6).  Plaintiff's pick-up truck observed earlier in the morning was now filled with plants, sitting in the driveway.  (Doc. 42-11; Doc. 42-14 at 2).  Deputies also spoke to Hannah Gesell at the scene, who told them her father was removing items that belonged to him.  (Doc. 42-11 at 4-5).  Deputies observed Plaintiff on the property.  (Doc. 42-11 at 5).  He appeared dirty and disheveled.  *Id.*  Plaintiff stated that he lived on the property but did not own it.  *Id.*  Deputy Brickman believed Plaintiff was impaired.  *Id.*  Deputy Brickman also believed Plaintiff's appearance was consistent with an individual who had been removing landscaping from the exterior of the property.  *Id.*  Plaintiff told the deputy that he had only removed his own personal property.  *Id.*  Plaintiff was arrested on the scene on October 26, 2012 for felony criminal damage and theft and transported to the Cave Creek MCSO Substation.  (Doc 42-11 at 6).  He was released later the same day.  (Doc. 42-3 at 2).  Plaintiff was not charged with a crime.  *Id.*  There is no evidence that Plaintiff's property was towed, impounded, or taken by the MCSO.  Property removed from the scene was removed at the direction of Del Deo by a third party vendor.  (Doc. 42-16 at 2-3; Doc. 42-17 at 2-11).  MCSO later deemed the case "inactive due to lack of evidence unless there are further developments."  (Doc. 42-7 at 19).  There is no medical evidence in the record that Plaintiff was injured as a result of his arrest.

**<u>Applicable Law</u>**

Plaintiff has named the following Defendants in his Complaint:  (1) Maricopa

County, Arizona, a Municipal Entity; (2) Sheriff Joseph Arpaio, in his official capacity as Sheriff; and (3) John and Jane Does, described as officers, agents and employees of Sheriff Arpaio and/or Maricopa County.  Plaintiff's federal claims are contained in Counts Seven (VII) through Fourteen (XIV) of the Complaint.  Plaintiff's federal claims arise from the allegation that Plaintiff's constitutional rights were violated when Plaintiff was arrested and his property was taken on October 26, 2012.  Plaintiff claims a violation of his right against unreasonable search, seizure, arrest, and excessive force pursuant to the Fourth Amendment, an unlawful taking of property pursuant to the Fifth Amendment, and a violation of due process under the Fourteenth and Fifth Amendments.[1]   All Defendants are alleged to have been acting in their official capacities under color of state law.  Therefore, all of Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983.

## **Municipalities**

42 U.S.C. § 1983 provides a cause of action for a plaintiff whose constitutional rights have been violated by the conduct of a defendant acting "under color of" state law. The defendant's conduct must have caused a deprivation of a right, privilege, or immunity secured by the Constitution or federal laws.  *See Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991)*; Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir. 1986)*.* Municipalities and other local governmental entities may be sued under 42 U.S.C. § 1983 for the acts of their officials only if a plaintiff can prove that the constitutional deprivation was the result of a custom or policy of the governmental entity.  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-691 (1978).  A local government cannot be held liable for the acts of its employees under the theory of *respondeat superior*.  *Bd. of County Comm'rs of Bryan County Okla. v. Brown*, 520 U.S. 397, 403 (1997).  Simply because a municipality employs a wrong-doing official does not create liability on behalf of the municipality.

---

[1] In Count VII, Plaintiff also alleges a violation of his Fifteenth Amendment rights.  However, no allegations support a claim for a violation of Plaintiff's Fifteenth Amendment rights.  Therefore, it is ordered striking Plaintiff's reference to the Fifteenth Amendment as a typographical error.

1

2          The law is clear that a random illegal search or an isolated use of excessive force

3    by a deputy are not the type of acts intended by *Monell* to create municipal liability.

4    *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992); *Navarro v. Block*, 72 F. 3d 712,

5    714 (9th Cir. 1996).   A "custom" or "policy" in the absence of an ordinance passed by a

6    municipal entity is a practice which must be sufficiently long-standing, wide spread, and

7    well-settled that the high ranking officials actually or constructively knew of and

8    condoned the alleged activity.   *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127

9    (1988); *Navarro*, 72 F.3d at 714-715.  Who is a high-ranking official or policy-maker is a

10   question of law for the Court to decide.  *See Owen v. City of Independence*, 445 U.S. 622

11   (1980) (city council held liable for voting to fire its chief of police); *Webb v. Sloan*, 330

12   F.3d 1158, 1164 (9th Cir. 2003), cert. denied 540 U.S. 1141 (2004).

13          A municipality also can be held liable pursuant to 42 U.S.C. § 1983 when plaintiff

14   establishes an alleged constitutional violation caused by the entity's "failure to train" its

15   employees adequately. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-391

16   (1989). However, a failure to train employees can provide a basis for municipal liability

17   "only where the failure to train amounts to deliberate indifference to the rights of persons

18   with whom the [officials] come in contact."  *City of Canton*, 489 U.S. at 388.  Plaintiff

19   must show not only that the training is inadequate; Plaintiff also must show that "the need

20   for more or different training is so obvious, and the inadequacy so likely to result in the

21   violation of constitutional rights, that the policymakers of the city can reasonably be said

22   to have been deliberately indifferent to the need."  *Id.* at 390.  Whether a municipality is

23   "deliberately indifferent" is judged by an objective standard, rather than a subjective

24   standard.  *Id.*  An unconstitutional policy of inadequate training cannot be inferred from a

25   single incident of excessive force.  *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985).  Nor is

26   simple negligence in training sufficient to establish liability under a failure to train

27   theory.  *Springfield v. Kibbe*, 480 U.S. 257 (1987).  In addition, to prove causation,

28   Plaintiff must show that the inadequate training actually caused the constitutional

deprivation.  *See Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).  A

"failure-to-train claim cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee." *Young v. City of Mt. Ranier,* 238 F.3d 567, 579 (4th Cir. 2001).

## Supervisors

Because there is no *respondeat superior* liability under 42 U.S.C. § 1983, Plaintiff must show that the employee's supervisor personally participated in the constitutional violation, directed the violation, or was aware of widespread abuse and failed to act to prevent the violation. *See Ortez v. Washington County*, 88 F.3d 804, 809 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff must prove that the supervisor (1) directed his subordinate in the acts that deprived Plaintiff of his rights, or (2) set in motion a series of acts by his subordinate that he knew or reasonably should have known would cause the subordinate to deprive Plaintiff of the rights, or (3) the supervisor knew or reasonably should have known that his subordinates were engaging in the acts alleged and that their acts would deprive Plaintiff of his rights and the supervisor nevertheless failed to prevent the subordinates from engaging in the offensive conduct. *See Taylor*, 880 F.2d at 1045; *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991); *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005), *overruled on other grounds by U.S. v. King*, 687 F.3d 1189 (9th Cir. 2012); *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003), *abrogated on other grounds by Hiibel v. Sixth Judicial Court*, 542 U.S. 177 (2004). *See also Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) *overruled on other grounds by U.S. v. King*, 687 F.3d 1189 (9th Cir. 2012); and *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005).

## Fourth Amendment

In a 42 U.S.C. § 1983 claim against individual defendants, the Plaintiff has the burden of showing that the conduct of the state actors deprived Plaintiff of his constitutional rights. The Fourth Amendment protects individuals from unreasonable searches, seizures, and excessive force. U.S. CONST. amend. IV ("the right of the people to be secure in their persons …against unreasonable searches and seizures, shall not be

violated"). The Fourth Amendment was incorporated by the Due Process Clause of the Fourteenth Amendment, and therefore state actors are subject to 42 U.S.C. § 1983 suits for violations of the Fourth Amendment. *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523 (1967); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Maryland v. Pringle*, 540 U.S. 366, 369 (2003). The Fourth Amendment's reasonableness standard rather than the Fourteenth Amendment's "shocks the conscience" standard applies to 42 USC § 1983 claims for Fourth Amendment violations. *Walker v. North Wales Borough*, 395 F.Supp.2d 219 (E.D. Pa. 2005)(most precise claim doctrine sets the standard of constitutional review). Plaintiff specifically must prove that the Defendants: (1) searched or seized the Plaintiff's person or property; (2) acted intentionally; and (3) the search or seizure was unreasonable.

Generally, warrantless searches are considered "unreasonable." *See Menotti*, 409 F.3d at 1154. However, a police officer may conduct a warrantless search incident to an arrest of both the arrested person and the area within his control. *See Chimel v. California*, 395 U.S. 752, 763 (1969) *abrogated on other grounds by Arizona v. Gant*, 556 U.S. 332 (2009); *Menotti*, 409 F.3d at 1153-1154. A search is considered reasonable if the person in lawful possession of the property consents to the search. *Georgia v. Randolph*, 547 U.S. 103, 105 (2006); *see also United States v. Ruiz*, 428 F.3d 877, 880-81 (9th Cir. 2005) (citing *United States v. Dearing*, 9 F.3d 1428, 1429-30 (9th Cir. 1993) (stating three-part test to determine apparent authority of third person)).

A search and seizure is also considered reasonable if the officers had a reasonable suspicion that the person searched was engaged in criminal activity and the length and scope of the seizure was reasonable rather than excessive. *See Terry v. Ohio*, 392 U.S. 1, 23-27 (1968); *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1996). A Court must look at the totality of the circumstances to determine if a reasonable suspicion existed. *United States v. Osborn*, 203 F.3d 1176, 1181 (9th Cir. 2000), cert. denied 530 U.S. 1237 (2000).

The seizure of an individual is reasonable without a warrant if the officer had

probable cause to believe the Plaintiff was committing a crime. *Devenpeck v. Alford*, 543 U.S. 146 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest . . . ." *Id.* at 152. A police officer may only use such force as is "objectively reasonable" under all the circumstances. Plaintiff has the burden of proof by a preponderance of the evidence that an officer used excessive force. Whether an officer used excessive force is determined under the objective reasonableness standard set forth in *Graham v. Connor*, 490 U.S. 386, 397 (1989). "[T]he court's consideration of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) (internal quotation marks and citation omitted). The Court looks to what the officers knew at the time of the arrest. *See Boyd v. City & Cnty of San Francisco*, 576 F.3d 938 (9th Cir. 2009); *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013); *Graham*, 490 U.S. 386 (1984).

### Fifth Amendment

The Due Process Clause of the Fifth Amendment states in pertinent part: "No person shall be . . . deprived of life, liberty, or property, without due process of law. . . ." U.S. CONST. amend. V. The Fifth Amendment also prevents the taking of private property for public use without "just compensation." *Id.*

However, the Fifth Amendment's Due Process Clause applies only to the federal government, while the Fourteenth Amendment's Due Process Clause applies to states. *Lyle v. Dodd*, 857 F.Supp. 958 (N.D. Ga. 1994). The Due Process Clause of the Fifth Amendment serves as a basic protection of citizens against unjust federal action. *U.S. v. Townsend*, 151 F.Supp. 378 (D.D.C. 1957). In a 42 U.S.C. § 1983 action alleging Fourth, Fifth, and Fourteenth Amendment violations by police brought by residents of a home subjected to excessive force, the Fourteenth Amendment rather than the Fifth Amendment's Due Process Clause was held to apply when no action by the federal

government was alleged by plaintiffs.  *See Igartua v. Toledo*, 698 F.Supp.2d 274 (D. Puerto Rico 2010).  In *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001), the Court held that the Fifth Amendment's Due Process Clause "appl[ies] only to actions of the federal government – not to those of state or local governments."  *See also Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) ("[T]he Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case.").  As Plaintiff does not allege that any of the Defendants are federal actors, any Fifth Amendment due process claim will be dismissed.  In addition, there is no evidence of a governmental taking of any of Plaintiff's private property.  Therefore, Plaintiff's Fifth Amendment claim under the taking clause will be dismissed.

## Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states in pertinent part: "nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV. Procedural due process refers to the process constitutionally due an individual who is deprived of a recognized liberty interest, such as adequate notice of proceedings held against a defendant and an opportunity to be heard. The procedural guarantees of the due process clause apply when a constitutionally protected liberty or property interest is at stake.  *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977).  Liberty interests arise from the U.S. Constitution.  *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  In this case, the liberty interest which Plaintiff implicates is his Fourth Amendment right against unreasonable search, seizure, and excessive force.  His procedural due process rights will be those rights due under the Fourth Amendment.

To prove a violation of substantive due process rights under the Fourteenth Amendment, Plaintiff must show that a state actor deprived Plaintiff of a protected interest in life, liberty, or property and that the state actor did so by behavior that "shocks the conscience."  *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008).  Behavior that shocks the conscience has been described by the Supreme Court as "so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).  Though the facts alleged by Plaintiff, even if assumed to be true, cannot by any reasonable juror be said to "shock the conscience," a Fourteenth Amendment analysis in this case is not appropriate.  The Fourteenth Amendment's substantive due process clause is invoked only when "no other constitutional provision more directly applies."  *Coyne v. Cronin*, 386 F.3d 280, 287 (1st Cir. 2004); *Estate of Bennett v. Wainwright*, 548 F.3d 155 (1st Cir. 2008).  Plaintiff has alleged an excessive force, unreasonable search and seizure claim under the Fourth Amendment.  Plaintiff's substantive due process claim is properly brought under the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force . . . in the course of . . . [the] 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.")

It is to the Fourth Amendment that the Court must look for consideration of Plaintiff's substantive and procedural due process rights.  Therefore, Plaintiff's Fourteenth Amendment claims will be dismissed.

## Discussion

### Maricopa County and Sheriff Arpaio

Considering the evidence in a light most favorable to the non-moving parties, the Court finds as a matter of law that Plaintiff has failed to state Fourth, Fifth and Fourteenth Amendment claims under 42 U.S.C. § 1983 against either Maricopa County or Sheriff Arpaio.  There has been no evidence presented of a custom, policy, or procedure of long-standing duration known actually or constructively by Maricopa County which resulted in a violation of Plaintiff's Fourth Amendment rights.  In addition, Plaintiff has failed to present any evidence of a failure by the County to train, supervise, or discipline MCSO deputies amounting to a deliberate indifference to the rights of Maricopa County residents.  Nor has Plaintiff presented any evidence that Sheriff Arpaio participated in the events of October 26, 2012, directed his deputies to deprive Plaintiff of

his rights, set in motion the activities of October 26, 2012, or knew or had reason to know the deputies were engaging in any offensive conduct toward plaintiff.  In fact, Plaintiff fails to present any credible evidence supported by the record that the deputies actually engaged in any offensive conduct during their contact with Plaintiff.

The record is clear that Plaintiff's private property was removed by a third party, not a government actor.  (Doc. 42-16 at 2-3; Doc. 42-17 at 2-11).  Therefore, no taking pursuant to the Fifth Amendment has been shown.

Finally, the law is clear that the Fourteenth Amendment is an inappropriate claim for relief under the facts of this Fourth Amendment search and seizure, unlawful arrest, excessive force case.  Therefore, Plaintiff has failed to meet his burden of proof as to Counts VII, VIII, IX, X, XI, XII, XIII, and XIV regarding Defendants Maricopa County and Sheriff Arpaio.  No genuine issue of material fact has been shown.  No reasonable juror could find otherwise based upon the record before the Court.

Defendants Maricopa County and Arpaio are entitled to judgment as a matter of law on Counts VII through XIV.

### John and Jane Does

The Court finds from the evidence presented that the responding deputies acted reasonably upon the information known to them at the time they contacted Plaintiff. Plaintiff was found on property owned by his landlord.  The landlord consented to officers being on the property.  The officers were told by the owner of the premises that valuable property was being removed from the premises without the consent of the owner.  The officers observed significant destruction to both the home and landscaping, with removed landscaping visible in the back of Plaintiff's truck.  They were told that Plaintiff was a large man with white hair.  When the officers observed Plaintiff, Plaintiff appeared to be dirty and disheveled – consistent with an individual who had been causing the damage officers personally observed.  Plaintiff also appeared to be impaired.  Plaintiff was arrested and removed without physical incident.

Based upon their personal observations and information relayed to the officers, the officers formulated a reasonable suspicion that Plaintiff was engaged in criminal conduct. Based upon the totality of the circumstances, the Court further finds that the deputies had probable cause to believe Plaintiff was committing a crime when officers arrested Plaintiff. *See Graham*, 490 U.S. at 396 ("the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them without regard to their underlying intent or motivation"). That is the only reasonable conclusion to be drawn from the facts known to the officers at the time of arrest. Plaintiff has failed to provide any evidence in the record to the contrary. Nor has Plaintiff provided evidence of the use of excessive force during Plaintiff's arrest or detention. Plaintiff was handcuffed, placed in a vehicle, and transported to the local substation. He was then released. The deputies did not take any of Plaintiff's property. There is no evidence of any injury sustained by Plaintiff which has been causally related to the events of October 26, 2012. No reasonable juror could find for Plaintiff based upon the evidence presented, drawing all reasonable inferences in favor of Plaintiff. The search of the property and arrest and seizure of Plaintiff were lawful. The property was removed by a private vendor at the owner's request. *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). The subsequent detention of Plaintiff was lawful, incident to his arrest. Because no genuine issues of material fact have been presented, Defendants John and Jane Doe are entitled to judgment as a matter of law on Counts VII through XIV.

## Conclusion

It is therefore ordered granting Defendants' Motion for Summary Judgment (Doc. 41) on all Plaintiff's claims raising federal questions, Counts VII, VIII, IX, X, XI, XII, XIII, and XIV.

It is ordered dismissing with prejudice Counts VII, VIII, IX, X, XI, XII, XIII, and XIV as to all Defendants.

It is ordered denying Plaintiff's Motion for Summary Judgment In Part (Doc. 38).

It is further ordered remanding the case to Maricopa County Superior Court for further action regarding Plaintiff's State claims raised in Counts I, II, III, IV, V, VI, and XV.

Dated this 2nd day of April, 2015.

_____
Honorable Eileen S. Willett
United States Magistrate Judge